# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE CO., | * |
| | * |
| Plaintiffs/Counter-Defendants, | * |
| v. | *     Civil Case No.: PWG-18-340 |
| ROD & REEL, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

State Automobile Mutual Insurance Company ("State Auto" or "Insurer") issued an insurance policy ("Policy") providing, *inter alia*, "blanket coverage for loss of business income and extra expense coverage" for the property and businesses of Defendants Rod & Reel, Inc., Chesapeake Beach Resort and Spa, Chesapeake Beach Hotel and Spa, Smokey Joe's Grill and Boardwalk Café, and Chesapeake Amusement, Inc. t/a Rod-N-Reel Bingo (collectively "Insureds"). Stip. Facts ¶¶ 1, 3, ECF No. 26-1. Following a fire, the Insureds submitted a claim, which State Auto accepted, but the parties could not agree "on the payment due under the Policy's loss of business and extra expenses coverage." *Id.* ¶¶ 5–12. The loss was appraised, resulting in an "Award" pursuant to the Policy's appraisal provision, and the Insureds sought to recover the amount stated as the "Total Award Amount" in the appraisal. State Auto refused to pay the total amount of the award (which was the sum of the appraisers' calculation of the monthly loss for a total of 15 months from the date of the fire loss), arguing that the Award included a determination of the "period of recovery" (that is, the period for which the Insureds

were entitled to recover under the Policy), which was outside the scope of the referral.[1] It filed suit, asking this Court to vacate the Award or, alternatively, to modify it to include only the month-to-month calculations of loss. *Id.* ¶¶ 21–26; Pet., ECF No. 1. The Insureds seek a judgment enforcing the Award or modifying it simply by removing the period of restoration but not the calculation of the total amount due. Ans. & Req. to Enforce, ECF No. 7; Defs.' Mot., ECF No. 24.[2]

Because the Award stated the period of restoration, which was outside the scope of the referral, the Award cannot be confirmed as drafted. Therefore, the Insureds' motion for summary judgment confirming the Award is denied, as is their Request to Enforce the Award. And, their motion, in the alternative, to modify the Award to eliminate the period of restoration but include the calculation of the total amount of loss is denied because it would imply the same period of restoration. Instead, in accordance with the appraisers' intent to calculate the total amount of loss without determining the period of restoration, the Award is modified to include only the month-to-month calculations. Thus, State Auto's Petition is granted insofar as the Award is modified, and it is denied insofar as the Award is not vacated.

---

[1] The crux of the dispute between State Auto and its Insureds is the duration of the period of restoration that limits the amount of the recoverable loss. More specifically, it is whether the Insurer must pay for the entire 15-month period following the fire loss that the appraisers used when calculating the monthly losses. State Auto agreed that the monthly losses were covered for a 12-month period of restoration; the Insureds contended the Insurer was required to pay them for a 15-month restoration period. Because of this dispute, State Auto paid the Insureds for the undisputed 12 month period—a total of $436,364.00, in two payments ($71,639.00, and $364,725.00). Jan. 22, 2018State Auto Corresp. 2, ECF No. 26-10. This case is a quarrel over the difference between what was paid and the total monthly losses calculated by the appraisers.

[2] The parties fully briefed the motion. ECF Nos. 24-1, 25, 26. A hearing is not necessary. *See* Loc. R. 105.6.

## Background

State Auto issued the "Policy," providing insurance coverage for Defendants' property and businesses, which are located at 4160 Mears Avenue, Chesapeake Beach, Maryland (the "Property"). Stip. Facts ¶¶ 1, 3. The Insureds' businesses include a hotel, restaurant, tackle shop, furniture storage, bingo, and related enterprises. *Id.* ¶ 1.

The Policy "provided blanket coverage for loss of business income and extra expense coverage." *Id.* ¶ 3. Specifically, it provided:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy, Jt. Rec. 14. The Policy defined "business income" as "a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and b. Continuing normal operating expenses incurred, including payroll." *Id.* It further defined "business income" to include "Rental Value." *Id.* It defined "period of restoration" to begin at a specific time following the loss or damage and to "end[] on the earlier of . . . [t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality or . . . [t]he date when business is resumed at a new permanent location," with exceptions. *Id.* at 21.

Additionally, it provided "Extended Business Income" coverage for business income other than rental value:

> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that . . . begins on the date property . . . is actually repaired, rebuilt or replaced and "operations" are resumed; and ends on the earlier of . . . [t]he date you could restore your "operations", with reasonable speed, to

the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or . . . [180] consecutive days after the date determined . . .. above.

*Id.* at 15–16, 21; *see also* Declarations, Jt. Rec. 4 (modifying the number of days stated on 15–16).

On February 8, 2015, at which time the Policy was in effect and the premium had been paid, a fire "damaged the Property and caused a loss of business income and incurred extra expenses." Stip. Facts ¶¶ 5, 7, 8. The Insureds submitted a claim, which included "a claim for the loss of business income and extra expenses incurred," and State Auto accepted the claim as covered under the Policy. *Id.* ¶¶ 9–10. Because the parties could not agree "on the payment due under the Policy's loss of business and extra expenses coverage," the Insureds exercised their right under the Policy to obtain an appraisal. *Id.* ¶¶ 10, 12; *see* July 25, 2017 Ltr., Jt. Rec. 24–26.

> The Policy's appraisal provision ("Appraisal Provision") provided:
>
> If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.
>
> The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Policy, Jt. Rec. 17; *see* Stip. Facts ¶ 11. The Policy provided for payment within thirty days of an appraisal award. *Id.*

4

The Insureds selected Charles Murray, Jr.; State Auto selected Randall Wilson; and the appraisers selected Retired Judge Richard Sothoron, Jr. as the umpire (collectively, the "Appraisal Panel"). Stip. Facts ¶¶ 13–15; Jt. Rec. 26, 28–29, 31. The agreement that the Appraisal Panel signed stated that they were "only appraising the amount of the loss and more specifically, the amount of the Business Income and Extra Expense loss (if any) relevant to the fire that occurred at the Smokey Joe's Grill (one of the named insureds under the policy) on February 8, 2015." Agr., Jt. Rec. 32.

The Appraisal Panel met in January to conduct the appraisal, and they all signed an appraisal award ("Award") on January 11, 2018. Stip. Facts ¶¶ 18–19; Award, Jt. Rec. 34. The Award stated:

> [T]he umpire and appraisers, after due consideration [illegible] the following appraisal award for the loss of Business Income and Extra Expense relevant to the captioned insurance loss:
>
> Total Appraisal Award for February 2015 through April 2016     $671,639
>
> It is further determined that this amount is before the $71,639 that was previously paid by the insurance company for Business Income and Extra Expense relevant to this loss and that the Appraisal Award of $671,639 is apportioned by month for the period shown based on the attached schedule.

Award, Jt. Rec. 34; *see id.* at 35 (Business Income and Extra Expense by month).

When the Insureds sent State Auto a proof of loss based on the Award and requested payment, State Auto challenged the Award and rejected the proof of loss, and this litigation ensued. *Id.* ¶¶ 21–26; Pet. State Auto argues that, notwithstanding the Award, the amount due under the Policy is disputed because, in its view, "the Property reasonably should have been repaired within twelve months following the Loss, while "Defendants contend that the repairs reasonably should have taken fifteen months." Pl.'s Opp'n 5.

5

## Pleadings

The parties agree that the Award should not have stated the period of restoration. Pet. ¶¶ 26–27 ("[T]he parties[3] agreed not to include the period of restoration in the appraisal," and "[t]he Appraisal Panel held a conference call on January 16, 2018, during which [Judge] Sothoron agreed with Wilson that the period of restoration should not have been addressed in the appraisal process."); Answer & Req. to Enforce ¶ 17 ("[T]he period of restoration was not part of the appraisal. . . . The appraisal was of the amount of the business income loss and not of the period of restoration."). Insisting that "[t]he only issue on which the Appraisal Panel ever reached an agreement was the month-by-month breakdown of the amount of loss," State Auto asks the Court to modify the Award by striking the "reference to a fifteen (15) month period of restoration and a total amount awarded of $671,639," so that the Award only includes the agreed-upon month-by-month calculation of the loss. Pet. ¶¶ 30, 38–39. Alternatively, it asks the Court to vacate the Award altogether, because "the Appraisal Panel exceeded their powers by making a determination regarding the period of restoration, a coverage issue not subject to appraisal." *Id.* ¶¶ 30, 43.

The Insureds counter that "the award for $671,639 without regard to a period of restoration is valid and binding," and they ask the Court to enforce the Award for the total amount stated. Answer 7–8. They claim that "the period of restoration language was inserted into the award by Wilson," while "both Murray and the umpire, the Honorable Richard Sothoron, both have stated that the award stands for the dollar amount Awarded." *Id.* ¶¶ 21, 24, 27. Thus, as they see it, because "signature to an award by two of the three appraisers and umpire make the award binding," the Award "is for a sum certain." *Id.* The Insureds assert that,

---
[3] It appears that "the parties" refers to the Appraisal Panel, rather than the parties to this litigation.

if the Award were to be modified, "the modification should be to remove any reference to the period of restoration which was inserted by State Auto's appraiser, and which does not affect the award for the dollar amount in the award." *Id.* at 8.

**<u>Parties' Arguments</u>**

The Insureds seek judgment on the pleadings or, alternatively, summary judgment, to confirm the Award or, alternatively, to modify it to include only the dollar amount. Defs.' Mem. 1. They also seek damages for what they view as State Auto's lack of good faith in bringing this action. *Id.* at 1, 25. They argue that judgment is appropriate at this juncture because "[n]o grounds exist to allow judicial review of the award. The appraisal award provides that the total appraisal award for February 2015 through April 2016 is $671,639. This award is regular on its face and is fully enforceable." *Id.* at 3. According to the Insured, "[e]ven if a review was allowed, [the Award] remains enforceable as to the amount of the award since 2 of 3 have agreed to the amount," and therefore "[e]ven if this Court were to allow a modification of the award, the only modification would be to remove the language as to the period of restoration." *Id.* at 3–4.

In State Auto's view, "[e]stablishing the amount *owed under the Policy* for a loss of business income necessarily requires two distinct determinations: (1) the amount of the policyholder's business income loss,"—which the Appraisal Panel was asked to determine—and "(2) the applicable period of restoration"— which the Appraisal Panel was *not* asked to determine but which appeared in the Award nonetheless. Pl.'s Opp'n 1 (emphasis added). As Plaintiff sees it, this means that the Award cannot be confirmed as drafted and "should be modified to remove the determination of the period of restoration and confirmed only as to the agreed-upon monthly breakdown of the amount of Defendants' business income loss." *Id.* at 2.

7

They ask the Court to deny the motion and direct the parties "to proceed with resolving the ongoing dispute concerning the period of restoration." *Id.*

**<u>Standard of Review</u>**

The same standard applies to Rule 12(c) motions for judgment on the pleadings as to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). But when, as here, a motion is styled in the alternative as one for summary judgment, and one or both parties file their briefs along with evidence that is not integral to the pleadings, they are on notice that I may treat the pending motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Because I have considered evidence such as correspondence among the Appraisal Panel members in resolving the motion before me, I will treat it as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Ridgell*, 2012 WL 707008, at *7.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). I view the facts in the light most favorable to State Auto as the party opposing summary

judgment. *See Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003); *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013).

### Choice of Law

Both parties apply Maryland law. *See* Defs.' Mem. 12–23; Pl.'s Opp'n 6. But, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "supplies not simply a procedural framework applicable in federal courts; it also calls for the application . . . of federal substantive law regarding arbitration." *See Dewan v. Walia,* 544 Fed. App'x 240, 244 (4th Cir. 2013) (*quoting Preston v. Ferrer*, 552 U.S. 346, 349 (2008)); *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 451–52 (4th Cir. 1997) (noting that the FAA provides "the substantive and procedural law associated with arbitration cases"); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) ("The Supreme Court has directed that we 'apply ordinary state-law principles that govern the formation of contracts,' *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 . . . (1995), and the 'federal substantive law of arbitrability.' *Moses H. Cone Mem'l Hosp.* [*v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)]."). Thus, "absent a clear[ ] expression of the parties' intent to invoke state *arbitration* law," which is not present in this case, the Court "will presume that the parties intended federal arbitration law to govern." *Porter Hayden Co. v. Century Indem. Co.,* 136 F.3d 380, 383 (4th Cir. 1998) (emphasis added). Accordingly, the FAA applies. *See id.* In any event, given that "[a] comparison of the Maryland statute with the Federal Arbitration Act reveals that the grounds for vacating arbitration awards are quite similar," this is a distinction without a difference, as it does "not seem to make any material difference whether this Court applies the federal standards for review of arbitral awards or those standards found in the state statute." *Jih v. Long & Foster Real Estate, Inc.*, 800 F. Supp. 312, 317 (D. Md. 1992).

## Review of Arbitration Award

The parties agree that the contractual provision at issue is an arbitration clause, even though it refers to appraisers rather than an arbitrator. Defs.' Mem. 12; Pl.'s Opp'n 8; *see also Liberty Mut. Grp., Inc. v. Wright*, No. DKC-12-0282, 2012 WL 718857, at *5 (D. Md. Mar. 5, 2012) (observing that an appraisal provision "constitutes arbitration under the FAA" where it calls for "submitting a dispute to a third party for a binding decision," which is "quintessential 'classic arbitration'" (citations and quotation marks omitted)); *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14, 20 (Md. 1982) ("In Maryland, this Court has long recognized that, notwithstanding the distinctions between an appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration. Consequently, this Court has applied arbitration law to appraisal clauses in insurance policies."). The Court's review of an arbitration award or, in this case, an appraisal award, "is 'substantially circumscribed.'" *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)); *see also Prince George's Cty. Police Civilian Employees Ass'n v. Prince George's Cty. ex rel. Prince George's Cty. Police Dep't*, 135 A.3d 347, 358 (Md. 2016). Indeed, given that "full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation," a court's review of an arbitration award "is among the narrowest known at law." *Three S Del.*, 492 F.3d at 527 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). The court "determine[s] only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Norfolk S. Ry. v. Sprint Commc'ns Co. L.P.*, 883 F.3d 417, 422 (4th

Cir. 2018) (quoting *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (internal quotation marks and citations omitted)).

"If there is a valid contract between the parties providing for arbitration, and *if the dispute resolved in the arbitration was within the scope of the arbitration clause*, then substantive review is limited to those grounds set out in [9 U.S.C. § 10]." *Choice Hotels Int'l, Inc. v. Shriji 2000*, No. DKC-15-1577, 2015 WL 5010130, at *1 (D. Md. Aug. 21, 2015) (citing *Apex Plumbing*, 142 F.3d at 193) (emphasis added). Section 10 provides that "[a] district court may vacate an arbitration award only if the arbitrators 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Norfolk S. Ry. v. Sprint Commc'ns Co. L.P.*, 883 F.3d 417, 422 (4th Cir. 2018) (quoting 9 U.S.C. § 10(a)(4)); *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(3) (providing limited grounds for vacating an arbitration award, including that "[t]he arbitrators exceeded their powers"). "[T]he party opposing the award [here, State Auto] bears the burden of proving the existence of grounds for vacating the award." *Choice Hotels Int'l, Inc. v. Austin Area Hosp., Inc.*, No. TDC-15-0516, 2015 WL 6123523, at *2 (D. Md. Oct. 14, 2015) (citing *Three S Del., Inc.*, 492 F.3d at 527). It is a heavy burden, as "[e]very presumption is in favor of the validity of the award." *Norfolk S. Ry.*, 883 F.3d at 422 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992) (internal quotation marks and citation omitted).

*Scope of Appraisal*

The preliminary question is whether determination of the period of restoration was within the scope of the appraisal, because if it was, then 9 U.S.C. § 10 significantly limits this Court's review. *See Choice Hotels*, 2015 WL 5010130, at *1. The Policy provided that either State

11

Auto or the Insured could "make written demand for *an appraisal of the loss*" if the parties "disagree[d] on the amount of Net Income and operating expense or the amount of loss." Policy, Jt. Rec. 17 (emphasis added). In their Memorandum, the Insureds contend that "[d]etermining the period of restoration is certainly something that could have gone into a determination of the amount of business interruption loss." Defs.' Mem. 24. They insist, without citing any case law in support, that "[e]ven if there is some inference that the timing issues were outside the appraisal agreement, that is not enough." *Id.*

The Insureds' current position cannot be squared with their earlier filings in this case, where they repeatedly asserted in their Answer and Request to Enforce that the Award should not have included a determination of the period of restoration, insisting that "the period of restoration was not part of the appraisal. . . . The appraisal was of the amount of the business income loss and not of the period of restoration." Answer ¶ 17; *see id.* ¶¶ 17, 21, 24, 27; *see also id.* at 7–8. Moreover, their attorney sent an email to the Appraisal Panel (without notifying State Auto that he was doing so, according to the Insurer, *see* Pl.'s Opp'n 10) on February 5, 2018, asking the panel members to sign a "Clarification of Award," which stated that "[t]he demand for appraisal did not request the appraisers and umpire to consider anything other than . . . '*the amount of Net Income and operating expense or the amount of loss*." Jt. Rec. 71, 148–49. The proposed "Clarification of Award" also stated that it "clarifies th[e] prior award [of January 11, 2018] and is to be considered in its place, with the prior award being vacated and this taking its place." *Id.* at 71.

State Auto agrees that determining the period of restoration was outside the scope of the referral. Pet. ¶¶ 26–27, 43. Further, the Appraisal Panel signed an agreement that stated that they were "only appraising the amount of the loss and more specifically, the amount of the

Business Income and Extra Expense loss (if any) relevant to the fire that occurred at the Smokey Joe's Grill (one of the (ironically) named insureds under the policy) on February 8, 2015." Agr., Jt. Rec. 32. And, the appraisers and umpire did not believe that they were determining the period of restoration. *See* J. Sothoron email, Jt. Rec. 151 ("Nowhere in the umpire agreement was there referenced that a period of restoration was to be addressed during the umpire session. Notwithstanding this period of restoration exclusion, Randy Wilson wished to address this issue during the umpire session and I voiced my inability to make any period of restoration determination given a lack of expert testimony/evidence addressing same. As Charles Murray and Randy Wilson are aware, the management of the Rod n' Reel was present at the umpire session and quizzed as to events following the February 8, 2015 fire, but no determination was rendered as to the period of restoration, for such was not the focus of this umpire session."). Thus, it is undisputed that determination of the period of restoration was outside the scope of the appraisal.

Indeed, the Fourth Circuit has held that an appraiser can calculate of the amount of loss without determining the period of restoration. *High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629 (4th Cir. 1997). In this regard, *High Country* provides helpful guidance. There, the Fourth Circuit considered an appraisal panel's determination of both the period of restoration and amount of loss and concluded that only the determination of amount of loss was binding, given that the appraisal provision only called for determination of *amount* of loss. In *High Country*, the defendant insured the plaintiff nonprofit corporation (the "Guild") for loss of business income, among other possible losses. *Id.* at 630–31. The policy provided, almost identically to the Policy in this case: "We will pay for the actual loss of Business Income you sustain due to necessary suspension of your 'operations' during the 'period of restoration.' The

13

suspension must be caused by direct physical loss of or damage to property at the described premises." *Id.* at 632. It also included a similar definition of period of restoration,[4] and it provided that the insurer would "only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage." *Id.*

Following a fire that "destroyed High Country's office and all of its property, including its computer database containing fund-raising and donor information," the Guild "reopened an office about one month later at a new location" but "struggled due to the lack of the database and diminished receipt of donations, and it wished not to proceed with [arts and crafts] shows scheduled for the summer." *Id*. at 630–31. The insurer insisted that the Guild proceed with two shows it had scheduled, and the Guild lost money at both shows. *Id.* at 631.

The Guild placed a business income loss claim with the insurer, seeking coverage for its losses for the twelve-month period after the fire, including its losses at the two shows. *Id.* "The parties agree that the period of restoration constituted the first 60 days after the fire" but disagreed about the amount of loss, which would include any "business loss . . . causally linked to the 60–day period loss . . . even if it occurs after that period, provided that it 'occur[red]' within 12 months after the date of loss." *Id*. at 632.

> The policy, like the Policy in this case, provided
>> If we and you disagree on the *amount of loss,* either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. [I]f they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the *amount of loss.*

---

4  The policy defines the "period of restoration" as "the period of time that (a) [b]egins with the date of direct physical loss or damage ... and (b) [e]nds on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."

*High Country*, 126 F.3d at 632.

*Id.* at 633.  So, the parties asked a panel of appraisers to determine the amount of loss.  *Id.* at 632.  The panel

> assessed High Country's business loss for the first 60 days after the fire at $26,518. The appraisers did not quantify the loss sustained after 60 days because they concluded that "[t]he period of coverage under the business interruption provisions of the policy in question should be limited to sixty days." They concluded that the losses from the two shows occurred after the 60–day period and therefore should not be covered, adding that no loss caused by a "lack of operational funds should be attributable to the policy."

*Id.* at 631.  When the insurer tendered only $26,518 to resolve the claim, the Guild filed suit.  *Id.*

The Guild prevailed at trial and the insurer appealed, arguing in part that the insured's damages should have been "limit[ed] . . . to $26,518, the amount of loss found by the appraisers."  *Id.* at 631, 634.  The Fourth Circuit noted that "[a]ppraisal provisions which bind the parties on 'the single issue of the amount of loss under a fire insurance policy, reserving all other issues for trial in court' long ago withstood due process challenges."  *Id.* at 633 (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co.,* 284 U.S. 151, 159 (1931)).  Considering the appraisal provision, the Fourth Circuit concluded that "the loss for the first 60–day period after the fire" was limited to $26,518 based on the appraisal, but that cap did not apply beyond the 60-day period "because that is all that the appraisal purported to measure."  *Id.* at 634.  It reasoned that, although the appraisal "purported also to resolve the coverage period questions, finding that the policy provided only for 60–days coverage[,] . . . the policy conferred on appraisers only the right to determine 'the *amount* of loss,' and consequently the parties [were] not to be bound by the appraiser's determinations of coverage issues."  *Id.* at 634 (emphasis in *High Country*).

Here, as in *High Country*, the Policy only provided for an appraisal to determine "the amount of loss."  Certainly, this Court must resolve all doubts as to the scope of this provision in

favor of the appraisers' authority. *Barranco v. 3D Sys. Corp.*, 734 F. App'x 885, 888 (4th Cir. 2018) (" 'In evaluating whether an arbitrator has exceeded his power, ... any doubts concerning the scope of arbitrable issues' or 'the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority.'" (quoting *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 531 (4th Cir. 2007)). Yet, as noted, the undisputed evidence establishes that the appraisers understood that the period of restoration was outside the scope of their review. And, as in *High Country*, the Policy did not provide coverage for the total amount of loss; it provided coverage for a specific period: In this case, it covered the loss *during the period of restoration*. Because the period of restoration was outside the scope of the referral, yet was stated in the Award, judicial review of the Award is appropriate, uninhibited by 9 U.S.C. § 10. *See Choice Hotels*, 2015 WL 5010130, at *1. Additionally, for this same reason and also because the parties dispute the period of restoration, the Award cannot be confirmed as drafted. Therefore, the Insureds' motion for summary judgment confirming the Award is denied, as is their Request to Enforce the Award.

*Appropriate Modifications to Award*

The question remains what modifications, if any, the Court may make to the Award. Certainly, I could vacate it altogether, pursuant to 9 U.S.C. § 10(a)(4), because the Appraisal Panel exceeded its authority. But, given that the two appraisers and umpire agree that the period of restoration should not have been included, and that two of the three (the required number for an appraisal award) agree that the total amount of monthly loss calculations came to $671,639, modification would be the better course of action so that the parties do not need to waste time and money by reinitiating the appraisal process to determine again the total amount of the loss, which already was agreed to by the number of appraisers required for a binding determination.

16

*See Stark v. Sandberg, Phoenix & von Gontard,* 381 F.3d 793, 799 (8th Cir. 2004) ("A 'district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11.'" (quoting *Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 721 (8th Cir. 1999))). Indeed, both parties ask the Court to modify the Award, State Auto asking for the modified Award to include only the month-to-month calculations, and the Insureds asking for the Court to modify the Award by simply removing the reference to the period of restoration.

Under the FAA, this Court "may make an order modifying or correcting the award upon the application of any party to the arbitration . . . so as to effect the intent thereof and promote justice between the parties" in three circumstances. 9 U.S.C. § 11. Relevant to this case, the Court may modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." *Id.* § 11(b). As noted, the Appraisal Panel was not asked to determine the period of restoration, yet they stated that the award was "for February 2016 through April 2016," thereby "award[ing] upon a matter not submitted to them." *See id.* And, stating a "Total Appraisal Award for February 2015 through April 2016" certainly "affect[s] the merits of the decision upon the matter submitted," as the "matter submitted" was the total amount of loss, but the Appraisal Panel decided the amount of loss *for a specific period*, such that if they incorrectly decided the period of restoration—meaning that the total awarded would be either too large or too small. *See id.* Thus, the Court may modify the award. *See id.*

As noted, State Auto believes the Award should include only the month-to-month calculations, from which the final loss may be determined once the dispute over the restoration period is resolved, while and the Insureds believe the Award should include the calculation of the total amount of loss and only eliminate the period of restoration. But the Insureds' approach

17

defies logic, because the monthly calculations show that the award under the Policy for the loss only totals $671,639 if the period of restoration is found to extend for the entire 15 months from February 2015 through April 2016. Thus, if modified as requested by the Insureds—deleting the determination of the period of restoration, but otherwise keeping the total amount of the loss the same—the modified Award nonetheless would presuppose the exact same period, resulting in a distinction without a difference. Therefore, the Insureds are not entitled to a judgment modifying the Award as they propose.

In sharp contrast, the month-to-month calculations enable ready calculation of the amount due under the Policy, once the period of restoration has been determined. Notably, if the Award is modified to include only the month-to-month calculations, and it is determined that the period of restoration is February 2015 through April 2016, then the amount due under the Policy, according to the modified Award, will be $671,639. If the period of restoration is determined to be a lesser time frame, then the monthly calculations determined by the appraisers will allow the appropriate calculation of the total amount of the covered loss. This modification accords with the intent of the parties, which was to calculate the total amount of loss without determining the period of restoration. Thus, this modification "effect[s] the intent" of the parties and certainly "promote[s] justice between the parties." 9 U.S.C. § 11. I will modify the Award accordingly. And, given that State Auto's request is meritorious, I will deny Defendants' request for damages for lack of good faith on Plaintiff's part, *see* Defs.' Mem. 25.

## Conclusion

In sum, the Insureds' motion for summary judgment confirming the Award or modifying it to eliminate the period of restoration but include the calculation of the total amount of loss, ECF No. 24, and their Request to Enforce the Award, ECF No. 7, are denied. The Award is

defies logic, because the monthly calculations show that the award under the Policy for the loss only totals $671,639 if the period of restoration is found to extend for the entire 15 months from February 2015 through April 2016. Thus, if modified as requested by the Insureds—deleting the determination of the period of restoration, but otherwise keeping the total amount of the loss the same—the modified Award nonetheless would presuppose the exact same period, resulting in a distinction without a difference. Therefore, the Insureds are not entitled to a judgment modifying the Award as they propose.

In sharp contrast, the month-to-month calculations enable ready calculation of the amount due under the Policy, once the period of restoration has been determined. Notably, if the Award is modified to include only the month-to-month calculations, and it is determined that the period of restoration is February 2015 through April 2016, then the amount due under the Policy, according to the modified Award, will be $671,639. If the period of restoration is determined to be a lesser time frame, then the monthly calculations determined by the appraisers will allow the appropriate calculation of the total amount of the covered loss. This modification accords with the intent of the parties, which was to calculate the total amount of loss without determining the period of restoration. Thus, this modification "effect[s] the intent" of the parties and certainly "promote[s] justice between the parties." 9 U.S.C. § 11. I will modify the Award accordingly. And, given that State Auto's request is meritorious, I will deny Defendants' request for damages for lack of good faith on Plaintiff's part, *see* Defs.' Mem. 25.

## Conclusion

In sum, the Insureds' motion for summary judgment confirming the Award or modifying it to eliminate the period of restoration but include the calculation of the total amount of loss, ECF No. 24, and their Request to Enforce the Award, ECF No. 7, are denied. The Award is

modified instead to include only the month-to-month calculations. This grants State Auto's Petition in part and denies it in part, because the Award is not vacated. Because it is not clear what further action, if any, the parties seek, I will issue a separate order scheduling a status call.

## **ORDER**

Accordingly, it is, this 7th day of November, 2018, by the United States District Court for the District of Maryland, hereby ORDERED that

1. Defendants' Motion for Judgment on the Pleadings or, Alternatively for Summary Judgment, ECF No. 24, treated as a motion for summary judgment, IS DENIED;
2. Defendants' Request to Enforce Award, ECF No. 7, IS DENIED;
3. Plaintiff's Petition, ECF No. 1, IS GRANTED IN PART AND DENIED IN PART, as follows:
   a. Plaintiff's request to vacate the Award IS DENIED; and
   b. Plaintiff's request to modify the Award IS GRANTED; and
4. The Award IS MODIFIED so that it includes the monthly calculations for amount of loss, Jt. Rec. 35, but does not state the period of restoration or award a total amount that was calculated based on a calculation of the period of restoration.

/S/
Paul W. Grimm
United States District Judge

lyb